UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ALAN DUANE LEWIN,

                Petitioner,                 CIVIL ACTION NO. 04 CV 70598 DT

        v.                        DISTRICT JUDGE BERNARD A. FRIEDMAN

BLAINE C. LAFLER,            MAGISTRATE JUDGE VIRGINIA M. MORGAN

                Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner brings this habeas corpus action seeking release from the custody of the

Michigan Department of Corrections. Petitioner, who is serving a state sentence for murder and

felony firearm, is represented in this action by counsel Martin Beres through whom petitioner

claims that various violations of his constitutional rights render his conviction invalid. After

petitioner had exhausted his appeals in state court, petitioner filed this action raising four issues:

    1.     *Due Process Violation at Trial:*
                Petitioner claims that he was denied his right to due process by the trial
                court's erroneous and improper admission of his prior bad acts.

    2.     *Ineffective Assistance of Trial Counsel:*
                Petitioner claims that he was denied his Sixth Amendment right to
                effective assistance of trial counsel because counsel failed to seek funds to
                retain a necessary expert witness.

    3.     *Ineffective Assistance of Appellate Counsel:*
                Petitioner claims that he was denied his Sixth Amendment right to
                effective assistance of counsel on direct appeal where appointed appellate

- 1 -

counsel failed to completely review the record and thus, procedural default
should not bar review of his claims.

4.    *Ineffective Assistance of Appellate Counsel*:
      Petitioner claims that his appellate counsel failed to raise on direct appeal
      certain meritorious reversible errors regarding jury bias and tainted
      confessions.

For the reasons discussed in this Report, it is recommended that the petition be denied.

The case arose from a robbery of a Speedway gas station in the city of Royal Oak on April 1, 1998, at approximately 5:00 in the morning. Lisa Stambaugh, the manager of the station, was killed when she was shot in the head during the course of the robbery. Stolen in the robbery were cash, lottery tickets, and phone cards. Petitioner, a former employee of the gas station, was convicted at a jury trial in 1998 in Oakland County, Michigan, of first degree murder. In addition to the felony firearm charges, the prosecution charged petitioner with murder on the basis of two alternative theories: either that the murder was premeditated due to prior bad feelings that petitioner had for Ms. Stambaugh, or that it occurred in the course of petitioner's committing felony robbery.

Evidence at trial established that shortly after 8:00 am on April 1, 1998, the police and the district manager of Speedway discovered the victim's body at the gas station. The door was unlocked, the victim had been shot four times with a .22 millimeter hand gun, and at least one shot was fired from close range. (Tr. V, 9; II 238-40) Evidence technician John Jacobs testified that there were no obvious signs of a struggle and the bullets entered the body in a downward trajectory. Defendant's fingerprints were at the inside of the front door and on the front window. (TT 24-25, 61) The alarm showed that it had been deactivated about 4:47 am. (TT 172-180)

- 2 -

Sheriff Deputy Robert Charlton took a video of the crime scene which was shown to the jury and the jury was taken for a view of the scene. (Tr. III 85-87)

The prosecution offered evidence of petitioner's motive, his opportunity to commit the crime, and eyewitness testimony putting him at the scene. With respect to motive and opportunity, testimony indicated that during the police investigation, petitioner was identified by various individuals as a former employee of the gas station who had a grudge against Lisa and who still had keys to the station. Lisa hired petitioner, but she fired him just two days before the killing. Her basis for firing him was frequent cash shortages on his shift. Lisa told her district manager that she was afraid of him. (Tr. II, 203-213) After the firing, petitioner went looking for other work. He told a potential employer that he had been fired from Speedway and that "a lady there had set him up." (Tr. III, 95) Petitioner also went to Subway–where he had worked before the gas station job. An employee of Subway testified that petitioner approached her looking to be rehired after Speedway fired him. He told the Subway employee that the next time he was fired, he was going up to end up killing someone. (Tr. VI, 48) Petitioner also told his girlfriend Joyce Hacker that Lisa had set him up. (Tr. VI, 16) Ms. Hacker testified that she and petitioner argued on the night before the murder because he had gotten fired again, and that when she awoke at 6:45 am, he was not at home. (Tr. VI, 19-29)

Eyewitness testimony was also offered. A witness who was a regular customer at the gas station testified that she drove past the Speedway at 6 am on the date of the murder, saw the lights not on, and saw petitioner exiting the side door. She recognized him because he had worked there. (Tr. V 29-38) At trial, the jury was shown a video tape made by the police during

- 3 -

the investigation.  It demonstrated what the customer would have been able to see that morning as she drove past the Speedway station.  (Tr. II, 45)

Petitioner's own statements were also offered at trial.  He gave varying statements about the murder.  The day after the murder, petitioner spoke with Royal Oak Police Officer Lynn Barron.  Petitioner initially stated that he had seen the killing in a dream, but later advised the officer that he had been at the Speedway when Lisa was murdered, that he had gone there to ask for his job back, and that she came at him with a clipboard and he shot her through the stomach. (Tr. VI, 103-107)  He said that another employee, Warren, drove him to the gas station and gave him the weapon, a 9 millimeter.  Barron spoke with Warren and after further investigation, ruled him out and concluded that petitioner did not get the gun from Warren.  The gun used was not a nine millimeter.  (Tr. VI, 107-119)

Petitioner told Royal Oak Police Detective Moreland, that he "could not recall killing" Lisa.  (Tr. VI, 60)  In a written statement, he specifically denied the killing.  According to his cellmate, petitioner admitted that he "did it. . . but they don't know I did it."  (Tr. VI 71)  He also allegedly told the cellmate that he burned the gun that he used with an acetylene torch, filed off the serial number and threw the gun in the river.  (Tr. VI, 71-84)  Petitioner told Michigan Police Lt. Wojnaroski that he had dream about going to the Speedway to get his job back.  In that dream, Lisa told him that he was not really fired; it was an April Fool's joke.  Later in the interview,  petitioner said that he was not willing to say he killed Lisa, but if he did kill her, he did not remember.  (Tr. VII, 5-10)

- 4 -

At trial, petitioner testified and denied killing Lisa, denied the statements that he would kill someone, and denied ever telling the police that he killed Lisa. (Tr. VII, 16-25) He stated that he started making things up about the murder when the police were questioning him because they were trying to confuse him and he was under stress. (Tr. VII 40, 42, 47, 56) He denied that any medical condition was the cause of his poor memory. (Tr. VII, 54) He was cross examined about earlier threats to his prior boss at 7-Eleven; he denied these. In addition, he denied telling anyone [in connection with a possible "hit man"] that he had "friends who were above the law." (Tr. VII 42, 58)

In addition to petitioner, the defense called a witness who testified that she went by the Speedway gas station at 6:55 am and did not see petitioner there. She saw only a woman with the car hood raised up, apparently checking her oil. (Tr. VII, 63)

In rebuttal, the prosecutor called Lauralynn Thornton who used to work with petitioner at 7-Eleven in December, 1997. She stated that there had been a dispute over petitioner's belief that the boss owed him money. Petitioner told Thornton that he would kill that boss because the boss was "fucking with the wrong guy." (Tr. VIII, 68) A deputy sheriff in the jail testified that petitioner told him that he had friends who were above the law and that his friends took care of one of witnesses to the crime. (Tr. VII, 70) The jury was instructed on the law and convicted petitioner. He was sentenced by the Hon. Fred Mester to mandatory life in prison without the possibility of parole, plus two years consecutive on the felony firearm charges. Petitioner timely appealed on the grounds that he was denied due process and a fair trial because of the improper admission of prior bad acts, character evidence and a video tape, and improper rebuttal

testimony, and also because he was denied funds to seek an expert witness.  The Michigan Court

of Appeals denied all his claims and affirmed his conviction in an unpublished per curium

opinion. (*People v. Alan Duane Lewin*, Docket No. 217288; Feb. 20, 2001).  Plaintiff filed pro

per a delayed application for leave to appeal and the Michigan Supreme Court denied the

application. (Docket No. 119000; Sept 25, 2001)

On September 17, 2002, petitioner filed a Motion for Relief from Judgment in the trial

court, claiming that he had ineffective assistance of counsel on his direct appeal which resulted in

the failure to raise several meritorious issues including jury bias, prosecutor misconduct, and

tainted confessions.  Judge Mester denied the motion in October, 2002, on the grounds that

petitioner had failed to demonstrate actual prejudice from the alleged errors.  Two weeks later,

petitioner filed a Motion for Reconsideration, which was denied in an undated order.

Subsequently, the Order Denying the Motion for Reconsideration was reissued with a date and

was entered on June 2, 2002.  On September 3, 2003, the Michigan Court of Appeals denied

petitioner's application for leave to appeal because he had not met his burden of establishing

relief under MCR 6.508(D).  On September 28, 2003, petitioner filed for leave to appeal to the

Michigan Supreme Court, which application was denied for failure to meet his burden under

MCR 6.508(D) on January 27, 2004.  Petitioner now brings this action.

A petition for a writ of habeas corpus is the exclusive federal remedy for a state prisoner

who challenges the fact or duration of his confinement and who seeks a speedier or immediate

release.  28 U.S.C. § 2254, <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 500 (1973).  The petitioner must

be in custody at the time the petition is filed.  28 U.S.C. § 2254(a).  The writ is the "remedy

available to effect discharge from any confinement contrary to the Constitution or fundamental

law, even though imposed pursuant to conviction by a court of competent jurisdiction." Preiser,

at 485.  Federal courts may entertain a state prisoner's petition for habeas relief only on the

grounds that the confinement violates the Constitution, laws, or treaties of the United States.  28

U.S.C. § 2254(a).

In 1996, significant amendments were made to the statute governing habeas corpus

proceedings.  Title 28 U.S.C. § 2254(d) now provides that an application for a writ of habeas

corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be

granted with respect to any claim that was adjudicated on the merits in state court proceedings

unless the adjudication of the claim resulted in a decision that was contrary to or involved an

unreasonable application of clearly established federal law, as determined by the Supreme Court

of the United States, or resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceeding.  An error that may

justify reversal on direct appeal will not necessarily support habeas relief through a collateral

attack on a final judgment.  Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

The respondent does not raise the issue of exhaustion and it appears that petitioner has

exhausted his claims.

A state prisoner must first exhaust remedies available in state courts before raising a

claim in a federal habeas proceeding.  28 U.S.C. § 2254(b).  This requirement provides state

courts with a "fair opportunity to apply controlling legal principles to the facts bearing on [the]

Constitutional claim."  Anderson v. Harless, 459 U.S. 4, 6 (1982).  In order to exhaust, petitioner

must alert the state court to the assertion of claims under the United States Constitution.  <u>Duncan v. Henry</u>, 115 S.Ct. 887 (1995); <u>Shoultes v. Laidlaw</u>, 886 F.2d 114, 116 (6th Cir. 1989) (petitioner must fairly present to the state courts the substance of the federal claim).  Exhaustion is not jurisdictional and the federal court need not require exhaustion if the unexhausted claims are frivolous or arise solely under state law.  <u>Cain v. Redman</u>, 947 F.2d 817, 820 (6th Cir. 1991), *cert. denied*, 470 U.S. 1050 (1991); *see also*, <u>O'Guinn v. Dutton</u>, 88 F.3d 1409 (6th Cir. 1986).  Dismissal to require exhaustion where the claims are frivolous does not demonstrate respect for state courts.  <u>Rose v. Lundy</u>, 455 U.S. 509, 525 (1982) (Blackmun, J. concurring).

1.     *Due Process Violation with respect to the Trial:* Petitioner claims that was denied his right to due process by the trial court's erroneous admission of evidence relating to prior bad acts.

Specifically, petitioner alleges that reference at trial to his prior cash shortages showed that he had a propensity to commit crimes and its admission was more prejudicial than probative.  As such, he claims, its admission was contrary to Michigan Rules of Evidence 403 and 404(b), and deprived him of due process.  It should be noted trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims cognizable in a habeas petition unless the error renders the trial so fundamentally unfair as to deprive the petitioner of federal constitutional rights.  <u>Matlock v. Rose</u>, 731 F.2d 1236, 1242 (6th Cir. 1984), <u>cert</u>. <u>denied</u>, 470 U.S. 1050 (1985).

Habeas relief for constitutional trial errors will only be granted when the error had substantial and injurious effect or influence in determining the jury's verdict.  <u>Brecht v. Abrahamson</u>, 113 S.Ct. 1710 (1993).  A violation that is not of constitutional magnitude is

generally not cognizable in federal habeas proceedings, regardless of whether it is a breach of federal or state law.  Pulley v. Harris, 465 U.S. 37, 41-42 (1984); Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994).   Habeas relief may be granted for errors not of constitutional magnitude, but instead based upon errors of federal law, only when there is a "fundamental defect which inherently results in a complete miscarriage of justice" standard.  Reed v. Farley, 114 S.Ct. 2291, 2297 (1994).

Respondent contends that review of the claim is barred by procedural default and, if not, lacks merit.  The procedural default argument follows from trial counsel's failure to object to the admission of this evidence.  The admission of prior bad acts evidence is not contrary to clearly established Supreme Court precedent.  Indeed, it is permitted by Federal Rules of Evidence Rule 404(b) (permitting introduction of prior bad acts).  Thus, the Michigan Court of Appeals review of petitioner's claim, which found no error in the admission of the prior bad acts, noting that they were properly introduced to show motive and they were more probative than prejudicial, was not contrary to law.  The Michigan court stated:

> "He first argues that the trial court improperly allowed the
> prosecution to present testimony of other bad acts, contrary to
> MRE 404(b).  Specifically, defendant challenges the introduction
> of testimony that he was fired from the gas station for alleged 'cash
> shortages.'  Because defendant did not object to this testimony at
> trial, appellate relief is precluded absent a showing of plain error
> affecting defendant's substantial rights.  People v. Carines, 460
> Mich 750, 763-64, 597 NW2d 130 (1999).  Because the challenged
> evidence was relevant to defendant's motive for killing the victim,
> a proper purpose under MRE 404(b)(1) and the probative value of
> the evidence was not substantially outweighed by the potential for
> unfair prejudice, defendant has not demonstrated plain error.

> People v. Starr, 457 Mich 490, 496 (1998), People v. Vandervliet,
> 444 Mich 52, 74 (1993) modified 445 Mich 1205 (1994)."

Opinion, *People v. Lewin* (2/20/2001).

The claim is thus procedurally barred.  Where the state court relies on a valid state procedural rule, such as the contemporaneous objection rule, to bar review of the claim on appeal, federal habeas review is barred unless the petitioner can show cause for the default and actual prejudice as a result.  See, Coleman v. Thompson, 501 U.S. 722 (1991), Ylst v. Nunnemaker, 501 U.S. 797 (1991).  Here, the Michigan court relied on the valid state procedural rule that petitioner had failed to preserve the issue because no objection was made at trial.  This reliance bars review of the federal constitutional claim.  Petitioner has failed to show cause for the default and, importantly, has failed to show actual prejudice.  Even if it were to be reviewed on the merits, as the Michigan court noted and the transcript supports, the admission of the prior bad acts was relevant to petitioner's motive and the probative value of the evidence was not outweighed by its prejudicial effect.  The objection, even if made, would not have been sustained and no prejudice resulted from any error.  Thus, this claim does not merit habeas relief.

2.      *Ineffective Assistance of Trial Counsel:*
        Petitioner was denied his Sixth Amendment right to effective assistance of trial counsel because counsel failed to seek funds to retain a necessary expert witness.

Petitioner alleges that trial counsel was ineffective because he did not seek funding for a psychiatric examination and/or a witness to investigate whether he could raise the defense of insanity.  The only difficulty with this argument is that petitioner offers no factual basis upon which this argument would have merit.  Petitioner does not claim that he is now insane, does not

claim that he was insane at the time of the killing, or insane or incompetent at the time of trial,

and he provides no factual basis to support any finding of mental illness.  He says that because he

told the police did not remember killing Lisa and/or saw it in a dream, he might have been

insane.  He contends that if there had been a psychiatrist, he might have been found to be insane

at the time of the killing, and this might have been "potentially outcome determinative."

(Petition 31)

Petitioner's claim that trial counsel should have sought public funds to retain an

independent psychological expert was reviewed by the Michigan Court of Appeals.  That court

held:

> ". . .defendant has failed to show how counsel's failure to request
> funds for a psychological expert falls below an objective standard
> of reasonableness, nor is it apparent from the record that an expert
> would have helped defendant's case.  Further, decisions as to what
> evidence to present and whether to call or question witnesses are
> presumed to be matters of trial strategy.. . (citations omitted) and
> defendant has presented no evidence to overcome that
> presumption.  Ineffective assistance of counsel has not been
> shown. . ."

(Court of Appeals Opinion, 2/20/01 p. 2)

Petitioner argues that he should have an independent medical examination so he could

have argued or invoked the defense of insanity.  No facts of record support that claim.  In order to

argue the defense of insanity, i.e., lack of criminal responsibility, petitioner would have been

required to admit that he committed the crime.  There is no evidence then or now that he would

do so.  He testified at trial and denied the murder and the robbery.  He has not admitted the crime

in the habeas petition.  There is no evidence in this record or at trial that he was willing to admit

- 11 -

the underlying acts or suffered from any diminished capacity.  Nor is there any claim on this

record, or any evidence in the state court record, of any mental impairment, history of

hospitalization, incompetency, or lack of criminal responsibility on any prior occasion.

Petitioner's claim that a psychological expert was necessary is specious.  Nothing in petitioner's

statements then or now would have put trial counsel on notice of a potential insanity defense.

The claim is mere speculation and does not warrant relief.

> 3.  *Ineffective Assistance of Appellate Counsel:*
> Petitioner was denied his Sixth Amendment right to effective assistance of counsel on direct appeal where appellate counsel failed to raise meritorious reversible error for appellate review.
> 4.  *Ineffective Assistance of Appellate Counsel*:
> Petitioner's appellate counsel failed to raise the meritorious reversible errors regarding jury bias and tainted confessions on direct appeal.

In both of these two issues, petitioner claims that his appellate counsel was ineffective for

failing to raise certain issues in his appeal of right.  Petitioner alleges that the issues of juror bias,

prosecutor misconduct, and tainted confessions would have merited reversal of his conviction,

and thus, should have been raised in his appeal.  Failure to raise these, he argues, constitutes

ineffective assistance.  Respondent correctly argues that review of the claims is procedurally

barred and thus, review can only be had if there is cause and actual prejudice from the error.  See,

Murray v. Carrier, 477 U.S. 478, 486-488 (1986).  Petitioner argues that ineffective assistance of

appellate counsel in failing to raise them constitutes cause, and because the underlying claims

would merit reversal had they been raised, he has been prejudiced.

In order to establish ineffective assistance of counsel, petitioner must show that counsel's

performance was deficient, and that such performance prejudiced the defense, i.e., that counsel's

- 12 -

errors were so serious as to deprive petitioner of a fair trial.  See, <u>Strickland v. Washington</u>, 466

U.S. 668 (1984); <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986).  Judicial scrutiny of a counsel's

performance must be highly deferential.  <u>Strickland</u>, 466 U.S. at 689.  Because of the difficulties

in assessing counsel's performance, a reviewing court must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is the

[petitioner] must overcome the presumption that, under the circumstances, the challenged action

'might be considered sound trial strategy.'"  466 U.S. at 689 (citing <u>Michel v. Louisiana</u>, 350 U.S.

91, 101 (1955)).  Petitioner must show there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  <u>Strickland</u>, <u>supra</u>.

Under the 1996 amendments to the Habeas Corpus Statute (AEDPA), a federal habeas court no

longer evaluates an attorney's conduct de novo under the <u>Strickland</u> standard where the state

court has held that a petitioner was not deprived of the effective assistance of counsel.  The

federal court  now gives "double deference," that is, its determination is whether the state court's

decision was an unreasonable application of the <u>Strickland</u> standard.  Under either level of

review, counsel here was not ineffective.

    The state courts have reviewed petitioner's argument, first presented to the trial court in a

post-conviction, post-appellate review Motion for Relief from Judgment.  The trial court held, in

an opinion on petitioner's motion, that regardless of whether counsel's representation fell below

an objective standard of reasonableness (and the court did not opine on this issue), petitioner had

failed to demonstrate the required prong of actual prejudice.  The court stated: "Defendant

[petitioner] has not referenced the record or demonstrated how he was prejudiced by the three

irregularities [juror bias, prosecutor misconduct, and tainted confessions].  It is insufficient for defendant to merely announce an alleged error and leave it up to the Court to discover or reject defendant's argument." (Opinion Order, Case No. 1998-159273-FC, Oakland Co. Circuit Court, October 2, 2002 pp3-4).  In review of that decision, both the Michigan Court of Appeals and the Michigan Supreme Court declined to consider the claims based on petitioner's failure to meet his burden under M.C.R. 6.508(D) (good cause for failure to raise the claim and actual prejudice from the irregularities, or a claim of actual innocence.)   Therefore, because petitioner has failed to establish ineffective assistance, review of the underlying issues composing ineffectiveness should be barred.

Clearly, and as conceded by petitioner, there is no constitutional right to have every non-frivolous issue raised on appeal.  Jones v. Barnes, 463 U.S. 745, 754 (1983).  Even if the court were to consider the merits of the claims discussed by petitioner, he would not prevail.

Petitioner first alleges as a meritorious claim not raised on appeal that his right to a fair trial was denied because a juror whose mother had committed suicide 15 years prior was permitted to remain on the jury.  The fact of the past suicide was not addressed in voir dire and it was only after the forensic testimony during the trial that the juror raised her concerns about the testimony being difficult for her.  Judge Mester conducted a colloquy with her, on the record and in chambers, and was satisfied that she could be fair to both sides.  He stated on the record, after giving the juror overnight to consider her situation, that she indicated she could be fair.  She remained on the jury without objection.  (Tr. 10/1/98 4-11)  Petitioner contends that the failure to excuse her was reversible error, but he points to nothing in the record.  The general rule is that

- 14 -

claims of juror bias and misconduct are subject to the harmless error analysis. Smith v. Phillips, 455 U.S. 209, 220 (1982). Determination of juror competency is left to the judge's discretion. U.S. Mikutowica, 365 F.3d 65, 74-75 (1st Cir. 2004). Failure to object in a timely manner with respect to juror issues can constitute a waiver of the objection. U.S. v. Reed, 790 F.2d 208, 210-11 (2nd Cir. 1986). In this case, trial counsel did not object to the manner in which the juror issue was handled. After the judge stated: "Let's see how she can get through this morning." Trial counsel stated: "this afternoon won't be any better or next week." (Tr. 10/1/98, 11-12) There is nothing in the record to show that the juror was unfair or was unable to continue. Counsel's statements in the brief that "obviously" her deep seated feelings prejudiced her against petitioner and tainted the rest of the jurors are not based on any facts, but are no more than mere speculation. Moreover, it is far from clear that her personal concerns with the testimony amounted to bias. Petitioner's theory of the case was always that he did not do the act. Thus, an argument that the shooting pictures were uncomfortable to view is wholly separate from the issue the jurors were to determine–the identity of the shooter. There is no showing of any error by the court, and even if there were, there is no indication that such an error permeated the trial so as to deny petitioner a fundamentally fair trial.

Petitioner's second basis is that there was some unspecified prosecutorial misconduct. The exact nature of this is not discussed by petitioner in his habeas brief, and the court sees no basis for the allegation. Petitioner claims that the prosecutor's conduct denied him his Fourteenth Amendment right to a fair trial. In analyzing claims of prosecutorial misconduct, the court is guided by the principles set forth below:

- 15 -

On habeas review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct was "so egregious so as to render the entire trial fundamentally unfair." This court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt.

In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard. The Court must examine "the fairness of the trial, not the culpability of the prosecutor."

The Sixth Circuit in [Serra v. Mich. Dept. of Corrections, 4 F.3d 1348, 1355-56 (6th Cir. 1993)] identified factors for consideration in weighing the extent of prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

In order to constitute the denial of a fair trial, prosecutorial misconduct must be " 'so pronounced and persistent that it permeates the entire atmosphere of the trial,'" or "'so gross as probably to prejudice the defendant.'"

Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997)(citations omitted).

A review of the transcript shows no such pervasive and persistent misconduct.

Petitioner's third issue is that his confessions were improperly admitted. He references his three alleged confessions to the jail house informant, Officer Barron of Royal Oak, and Deputy Chevaliar of the Oakland County Sheriff's Department. Petitioner discusses the Constitutional requirement that the statements be voluntary, citing to Dickerson v. United States,

- 16 -

530 U.S. 428 (2000)(due process requires that the confession must be voluntary under the totality

of the circumstances), and then says only that "it cannot be determined whether or not Mr. Lewin

satisfies the standards set forth in <u>Dickerson</u> without being granted an evidentiary hearing for the

determination."  (Pet. Brief 42)  The basis for the claimed involuntariness is that petitioner's

volitional ability was impaired because he was "stressed out," and because he had learning

disabilities.  However, petitioner made the statements to several individuals over the course of

time and points to no coercive actions on the part of any of the officers or his cellmate.[1]  Thus,

because petitioner makes no allegations of coercive conduct, petitioner's arguments regarding the

bizarre

nature of the statements, his claims of being "stressed out" and having learning disabilities are

irrelevant and would not have resulted in a reversal of his conviction.

Accordingly, it is recommended that the petition be denied and case dismissed.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140

---

[1]To hold a confession involuntary, it is coercion by a state actor (i.e. law enforcement officer) which is a necessary element in satisfying the test with respect to overbearing the will of the accused.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 170 (1986) (even where mental illness interfered with defendant's free will, confession was voluntary because no evidence of coercion on part of police officer).

- 17 -

(1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

<div style="margin-left: 40%;">
 s/Virginia M. Morgan
VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE
</div>

Dated:   January 13, 2006

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 13, 2006.

<div style="margin-left: 40%;">
s/J Hernandez
Case Manager to
Magistrate Judge Virginia M. Morgan
</div>